CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

OCT 06 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HARRIETT J. BROUGHMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:07cv00233 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

Plaintiff Harriett J. Broughman ("Broughman") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits under the Social Security Act (the "Act"). Broughman raises two issues on appeal. First, Broughman argues that the Administrative Law Judge ("ALJ") erred by failing to take into account a psychological evaluation conducted in 1999, which notes she has a full scale IQ of 85. Second, Broughman claims that the vocational expert's testimony was flawed because he did not specifically state the region in which jobs exist. Broughman further contends that the ALJ erred at step five of the analysis by embracing the vocational expert's testimony and by referring to the relevant region as West Virginia, although Broughman lives in Low Moor, Virginia. Having reviewed the record, it is clear that the ALJ's finding that Broughman is not disabled under the Act is supported by substantial evidence. Thus, the undersigned recommends that the Commissioner's Motion for Summary Judgment be granted and Broughman's Motion to Remand be denied.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC")[1], considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

3

## II

Broughman was born in 1966, (Administrative Record, hereinafter "R." 33), and is considered a younger individual under the Act. 20 C.F.R. § 404.1563(c). She completed the seventh grade and can read and write English. (R. 33.) Prior to the alleged onset date, Broughman worked as a secretary, (R. 33, 47), and she has also worked as a certified nursing assistant (CNA) and a cashier. (R. 42, 47.)

Broughman alleges a disability onset date of February 10, 2003 due to asthma, osteoporosis, arthritis, swelling in the knees and low potassium. (R. 134.) Her application for benefits was rejected by the Commissioner initially and upon reconsideration. An administrative hearing was convened before an Administrative Law Judge ("ALJ") on September 18, 2006. (R. 29-51.) In determining whether Broughman was disabled under the Act, the ALJ found that her back disorder qualifies as a severe impairment, see 20 C.F.R. § 404.1520(c), that she has the residual functional capacity ("RFC") to perform sedentary work which affords her a sit/stand option, and that jobs exist in significant numbers in the national economy that Broughman can perform. (R. 15, 17, 19.) Thus, she is not disabled under the Act. (R. 20.) The Appeals Council denied Broughman's request for review and this appeal followed.

## III

Broughman argues that the ALJ erred by failing to consider a psychological evaluation completed by a licensed professional counselor on March 16, 1999. (R. 151-59.) This evaluation was performed as a result of Broughman's difficulty passing her cosmetology exams, in order to determine what testing accommodations might assist her. (R. 151.) The evaluation revealed Broughman has a verbal IQ of 88, a performance IQ of 83 and a full scale IQ of 85. (R. 155.) All three of these scores fall within the low average range. (R. 155.) The report

4

recommended that Broughman be permitted to take her cosmetology exams in a distraction-free environment, that she be given additional time to complete the exam, and that she be read the exam questions aloud. (R. 159.)

Broughman argues that the ALJ's failure to consider Broughman's education and "mental issues," (Pl.'s Br. 3), warrants remand. In fact, the ALJ did consider Broughman's limited education, incorporating it into the hypothetical, (R. 49), and referencing it in his findings. (R. 19.) He also weighed Broughman's depression and anxiety in his disability determination and found that they were non-severe impairments. (R. 17.) The evidence of record supports the finding that Broughman does not have a severe mental impairment.[2]

Notwithstanding the ALJ's failure to specifically reference the 1999 psychological evaluation, his decision is supported by substantial evidence. The ALJ is not obligated to discuss every single piece of evidence in the record, and his failure to cite a specific piece of evidence is not an indication that the evidence was not considered. Green v. Shalala, 51 F.3d 96, 101 (7th Cir.1995); accord Johnston v. Astrue, No. 407cv70, 2008 WL 2397541, at *3 (E.D.N.C. June 12, 2008). Moreover, the psychological evaluation at issue was performed in 1999 – four years before Broughman's alleged disability onset in 2003 – while Broughman was still performing her past relevant work. Even assuming, as Broughman suggests, that IQ test scores remain

---

[2] On two occasions, Broughman was prescribed 2 mg or less of Ativan for anxiety. (R. 295, 384.) Following complaints of situational depression in February 2004, Dr. Goings prescribed 50 mg of Zoloft. (R. 383, 388.) The record documents that she continued that prescribed treatment through March, 2004, (R. 389); however, there is no evidence of further treatment for depression, anxiety or any other mental impairment. Nor is there evidence that Broughman has been hospitalized for any mental impairment.

5

constant throughout one's lifetime, Broughman's IQ of 85 does not in and of itself render her disabled.[3]

Broughman claims disability based on asthma, osteoporosis, arthritis, swelling in the knees and low potassium. (R. 134.) She does not claim disability based on a low IQ or mental impairment. Nor did she indicate at the administrative hearing that her alleged inability to work stems from a mental infirmity. Rather, when asked whether she thought she could return to work as a secretary, Broughman testified:

> A: No, sir, I don't.
> Q: Why not?
> A: Because there's some days I can't do nothing.
> Q: Why?
> A: I hurt.
> Q: In your back?
> A: My back and my knee.

(R. 43.) Broughman claims her physical impairments prevent her from working. (R. 33, 42, 43.) Over and over, Broughman testified that she was physically unable to perform her job due to her back and knee. (R. 33, 35, 36, 38, 40, 42, 43, 50, 51.)

On brief, Broughman argues that she put the ALJ on notice of her mental impairments at the administrative hearing, stating in response to a question: "I just couldn't comprehend it." (Pl.'s Br. 3.) However, taken in full context, Broughman's statement was made while discussing her inability to pass her cosmetology tests:

> Q: You had trouble reading [the cosmetology test].
> A: I just couldn't comprehend it.
> Q: Right.
> A: But I mean, I tried. I mean, I – there's nothing I won't try.
> Q: Well, you can read.
> A: I can read.

---

[3] Under Listing § 12.05, the required level of severity for mental retardation is met when a claimant as a valid verbal, performance or full scale IQ of 59 or less, or an IQ of 60 through 70 and meets other criteria.

6

(R. 49.) Broughman in no way stated that she could not understand the proceedings or the ALJ's questions. Likewise, a review of Broughman's daily activities reveals that her IQ of 85 and limited education do not interfere with her functioning. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss.") For example, there are numerous references in the record to Broughman's ability to read and write English. (R. 33, 49, 134.) Notably, she last worked as a secretary. (R. 33.) Broughman indicates that she does not need help grocery shopping, cooking or performing household chores. (R. 70.) She was able to complete her disability form without assistance, (R. 74), she pays her bills herself and she takes her own medications. (R. 116.) She was also able to complete a CNA program and earn her CNA license. (R. 153.)

Broughman relies on Bickford v. Barnhart, 242 F. Supp. 2d 39 (D. Me. 2002), to support her argument that the ALJ erred by failing to consider the 1999 psychological report. In Bickford, plaintiff claimed that the ALJ ignored conclusions of Veterans Administration physicians that he suffered a 60% disability and was unemployable due to his back pain. 242 F. Supp. 2d at 42. The court found that the Veterans Administration record included results of medical testing that supported the physicians' conclusions, and therefore remanded the case for consideration of this evidence. Id. at 42.

The facts in Bickford are entirely distinguishable from the case at hand. At issue in the instant case is an evaluation performed by a licensed professional counselor as a result of Broughman's failure to pass her cosmetology tests. This evaluation recommends certain testing strategies and documents her IQ of 85. However, Broughman does not allege disability based on a low IQ or mental impairment, and this evaluation does not purport to render an opinion as to

7

Broughman's total disability. Evidence of record does not support a finding that she is unable to work due to a low IQ or mental impairments. On the contrary, two state agency physicians reviewed the medical evidence, (R. 168-81, 359-71), and found that Broughman, at most, suffers from mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace.

Plaintiff bears the burden of proving she is disabled. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Broughman did not raise the issue of a mental impairment in her disability application or at the administrative hearing. Nor does the record evidence support a finding that a low IQ or mental impairment limits her ability to work. The hypothetical posed to the vocational expert fairly sets out all of Broughman's impairments. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ took into account Broughman's limited education in his disability determination, and he had no obligation to specifically address the 1999 psychological evaluation. Therefore, the ALJ's decision is supported by substantial evidence.

## IV

Plaintiff further claims that the ALJ erred by failing to demonstrate at step five that there were jobs available in her region. Broughman specifically contends that the vocational expert's (VE) testimony as embraced by the ALJ was flawed and requires remand. (Pl.'s Br. 4-5.) At the administrative hearing, the VE testified that Broughman could:

> Do one of the jobs of a receptionist, information clerk at the unskilled level, sedentary. There's some 97,000 of those jobs on the national – in the national economy, and about – or more than 2,800 of those within the region. She could also do assembly work at the sedentary, unskilled level. There's just under 60,000 – essentially 60,000 of these jobs in the national economy, more than 1,800 of those within the region. She could do the work – one of the messenger/courier kinds of jobs done at the sedentary, unskilled level. There's some 21,000 of those nationally.

8

(R. 49.) The ALJ adopted the VE's testimony, but mistakenly noted in his decision that the relevant region was West Virginia. (R. 20.) Broughman lives in Low Moor, Virginia, which is approximately twenty (20) miles from the West Virginia border. Regardless, this fact is inapposite.

The VE did not refer to a specific region in his testimony, nor is he obligated to do so. The statute provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, **engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives,** or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (emphasis added). The regulation requires identification of available jobs in the national economy, defined as the region in which the claimant lives or in several regions in the country. 20 C.F.R. § 404.1560(c)(1).

"The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The VE in this case did just that. After reviewing the record and listening to Broughman's testimony, the VE was undoubtedly aware of where Broughman lives. The fact that the ALJ referred to the relevant region as West

9

Virginia is of no moment. There is simply no evidence to support Broughman's claim that the VE testimony was flawed.

Plaintiff bears the burden of showing that she suffers from a medically determinable impairment that is so severe it prevents her from engaging in any substantial gainful activity that exists in the national economy. The ALJ properly analyzed the case under five step of the sequential evaluation process and found that plaintiff could perform work in the local and national economy. 20 C.F.R. § 404.1520(a)(4)(v).

V

For the foregoing reasons, the undersigned recommends that, given the standard required for review of the Commissioner's administrative decision, this case be affirmed. The ALJ did not err by failing to consider the 1999 psychological evaluation, as Broughman does not claim disability based on a low IQ or mental impairment, nor does the record support such a finding. Furthermore, the VE identified jobs that Broughman could perform in the national economy pursuant to 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1560(c)(1). The ALJ properly analyzed this case under step five of the sequential evaluation process, despite his mistaken reference to West Virginia. The ALJ's decision is supported by substantial evidence. Accordingly, it is **RECOMMENDED** that Broughman's Motion for Remand (Docket #25) be denied and the Commissioner's Motion for Summary Judgment (Docket #27) be granted.

In recommending that the decision of the Commissioner be affirmed, the undersigned does not suggest that Broughman is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective

evidence in adjudicating Broughman's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

The Clerk is directed to transmit the record in this case to the Honorable James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 6th day of October, 2008.

Hon. Michael F. Urbanski
United States Magistrate Judge

11